IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **THOMAS S. CHILDS,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. **3:15-CV-403-L** |
| **RESIDENT COLLECT, INC. d/b/a** | § | (Consolidated with 3:15-CV-1001-P**)** |
| **RESIDENT COLLECT; ALLIED** | § | |
| **COLLECTION SERVICES; RESIDENT** | § | |
| **CHECK, INC. d/b/a RESIDENT CHECK;** | § | |
| **ENCLAVE AT VALLEY RANCH;** | § | |
| **INVESTORS MANAGEMENT TRUST** | § | |
| **REAL ESTATE GROUP, INC., d/b/a** | § | |
| **IMT RESIDENTIAL,** | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are Defendants' Motion for Summary Judgment (Doc. 92), filed September 30, 2016; Defendants' Motion for Rule 37 Sanctions (Doc. 94), filed October 11, 2016; and Defendants' Motion for Sanctions for Failure to Comply with Court Order (Doc. 109), filed December 2, 2016. After considering the motions, briefs, admissible summary judgment evidence, record, and applicable law, the court **grants** Defendants' Motion for Summary Judgment (Doc. 92) and **dismisses with prejudice** Plaintiff's claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* Further, with respect to Defendants' motions for sanctions, which were referred to the magistrate judge, the court **vacates** the orders of reference (Docs. 106, 112); and **grants** Defendants' Motion for Rule 37 Sanctions (Doc. 94) and Motion for Sanctions for Failure to Comply with Court Order (Doc. 109), to the extent herein set forth.

## I.        Factual and Procedural Background

Plaintiff Thomas S. Childs ("Plaintiff" or "Childs"), who is proceeding *pro se*, brought this action on February 6, 2015, against Defendants Resident Collect, Inc. d/b/a Resident Collect ("RCI"); Allied Collection Services ("Allied"); Resident Check, Inc. d/b/a/ Resident Check ("Resident Check"); Enclave at Valley Ranch ("Enclave"); and Investors Management Trust Real Estate Group d/b/a IMT Residential ("IMT") (collectively, "Defendants"). In his Amended Complaint, the live pleading, Plaintiff asserts three causes of action against Defendants for alleged violations of §§ 1681s-2(b)(1), 1681e(b), and 1681i(a)(1) of the FCRA.

In 2009, Childs was leasing and residing in an apartment at Enclave. Plaintiff's FCRA claims pertain to a final statement of charges assessed against Childs in September 2009 by Enclave after he gave notice on July 28, 2009 of his intent to vacate his apartment, and subsequently vacated the apartment on August 31, 2009.[1] Enclave assessed a final balance of $1,914.62 against Childs, which consisted of a $533.87 insufficient notice fee; a reletting charge of $551.65; a concession-charge-back in the amount of $763 ($649 for February 2009 rent plus $19 per month in rent reductions from March 2009 to August 2009); and cleaning and water utility charges totaling $66.10. *See* Defs.' Summ. J. Mot. 4-5; Defs.' Summ. J. App. 11; Pl.'s Summ. J. Ex. B. The parties dispute whether Childs was required, under a January 26, 2009 apartment lease entered into by him and Enclave, to give thirty or sixty days' notice of his intent to vacate his apartment.

After Childs failed to pay the amount due assessed under the final statement prepared by Enclave, the debt was turned over for collection to Allied, a division of RCI, and a $50

---

[1] Unless otherwise specified, the facts set forth by the court in this opinion are undisputed.

administrative fee was added on November 4, 2009.[2]  A record of Plaintiff's account with Enclave and the collection efforts with respect to the account were maintained by RCI.  On December 3, 2009, when Childs contacted Enclave managers Misty May ("May") and Shannon Toone ("Toone") about the "collection [that] ended up on [his] credit report," he was told by May and Toone that his account had been turned over to a collection agency and all communications and correspondence by him moving forward would need to be with the collection agency.

Between December 2009 and January 2013, Plaintiff contacted Enclave and Allied a number of times to dispute the debt, request documents and proof of the validity of the debt, and request that his credit report be corrected to remove the reference to the outstanding debt.  On May 13, 2010, May agreed to reduce Plaintiff's outstanding account balance to $624.90 ($599.90 plus a $25 administrative fee), even though Enclave believed the charges were valid.  Plaintiff disputes the validity of the debt and contends that Defendants only agreed to reduce the amount of the debt after he asked several times for a copy of the "unit ledger" for his apartment.  Defendants contend that the decision was made as an attempt to resolve quickly the dispute with Plaintiff and avoid further harassment by him. After Plaintiff's balance was reduced to $624.90, Plaintiff continued to dispute the reduced debt and filed a complaint with the Better Business Bureau against Enclave and Allied on June 1, 2010.

On September 10, 2010, IMT regional manager Shawna King ("King") attempted to reach a final settlement of the dispute with Plaintiff and agreed to forgive the $533.87 charge for insufficient notice, which further reduced the amount owed by Childs to $51.10 for a water bill, wall

---

[2] Defendants assert that the addition of this fee brought Plaintiff's total account balance to $1,942.10. According to the court's calculation, $1,914.61 plus $50 equals $1,964.62, which is slightly more than $1,942.10; however, in the final analysis, this minor discrepancy is of no moment.

stains, and replacement of light bulbs. Defendants' records indicate that, on September 13, 2010, after receiving instructions from IMT, Allied adjusted the balance owed on Plaintiff's account to $76.10 ($51.10 plus a $25 administrative fee), and, on September 23, 2010, Allied modified Plaintiff's credit report with TransUnion and Experian, but it is unclear whether the modification that was made pertained to the adjustment in Plaintiff's debt to $76.10. The parties dispute whether, as part of the agreement between King and Plaintiff, Plaintiff was supposed to make the $51.10 payment before or after his credit reports were updated to reflect satisfaction of the balanced owed. There is no admissible summary judgment evidence that Plaintiff ever paid the $51.10. Plaintiff continued to dispute the remaining balance in writing and by telephoning Allied, and Plaintiff's credit reports continued to include a debt amount for Resident Collect, Inc. of $625 until February 6, 2013, when his credit report showed a reduced debt amount of $76.[3]

Plaintiff filed his Original Complaint in this case in February 2015 against Defendants, alleging violations of the FCRA. Plaintiff also filed similar lawsuits against Resident Check and Enclave in the Northern and Western Districts of Texas, which were consolidated by former United States Chief District Judge Jorge A. Solis ("Judge Solis") with this case. Plaintiff filed his Amended Complaint ("Complaint") in this case on February 24, 2016.

In his Complaint, Plaintiff contends that the debt amounts reported by Defendants to credit reporting agencies[4] are invalid and incorrect; that Defendants knew he did not owe the amounts reported; that Defendants failed to conduct a reasonable investigation and reinvestigation as required by the FCRA into the accuracy of the information reported after Plaintiff disputed the debt and failed

---

[3] It is unclear why Childs's credit report showed an outstanding debt of $76, as opposed to $76.10.

[4] The court refers herein to the terms "credit reporting agency" and "consumer reporting agency" as "CRA."

to accurately update the information reported regarding the outstanding debt.  Plaintiff contends that, as a result of Defendants' conduct, he suffered damages, including:

> economic loss due to denial of financing or higher credit terms for furniture, clothes, household items, and vehicles, loss of opportunity to obtain credit, inability to secure rental housing, damage to reputation, and expenditure of considerable time and out-of-pocket expenses.  Plaintiff also suffered physical and emotional distress including worry, fear, distress, frustration, humiliation, embarrassment, mental distress, loss of sleep, nervousness, shame, fright, grief, and injury to reputation, family, and sense of well-being.

Pl.'s Am. Compl. 6.  Plaintiff, therefore, contends that he is entitled to recover actual damages, attorney's fees, and costs.  In addition, Plaintiff asserts that he is entitled to statutory and punitive damages for Defendants' allegedly willful or negligent refusal to follow reasonable procedures to assure the accuracy of information reported or conduct in engaging in a pattern of refusing to follow reasonable procedures in investigating and reinvestigating his disputes as required by the FCRA.

The case was reassigned to the undersigned on April 27, 2016, after Judge Solis retired.  On September 30, 2016, Defendants moved for summary judgment on the following grounds: (1) Plaintiff's claims are barred by applicable statute of limitations; (2) Defendants cannot be liable under the FCRA because none of them is a CRA, and Resident Check, Enclave, and IMT do not qualify as "furnishers" of information under the FCRA; (3) the amounts charged to Plaintiff were valid under the Lease and were properly reported; and (4) RCI and Allied, the only Defendants that furnished information regarding Plaintiff's account to consumer CRAs, satisfied their duties under the FCRA to reasonably investigate Plaintiff's disputes and reported and verified all disputes.  In October and December 2016, Defendants moved for sanctions against Plaintiff pursuant to Federal Rule of Civil Procedure 37.

II.	**Defendants' Summary Judgment Motion**

A.	**Summary Judgment Standard**

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).  "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita*, 475 U.S. at

587. (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## B. Analysis

Defendants moved for summary judgment on all three of Plaintiff's claims for alleged violations of the FCRA.

1. **Statute of Limitations**

Defendants contend that all of Plaintiff's FCRA claims are barred by the two-year statute of

limitation set forth in 15 U.S.C. § 1681p. Defendants contend that Plaintiff's claims under the FCRA

are barred because:

> 20. Based on Plaintiff's exhibits, Plaintiff knew of the information being reported as early as Nov. 21, 2009. <u>Doc. 47</u> at 13. Based on Defendant's records, Plaintiff knew of the information being reported on his credit report as early as April 20, 2010. <u>Exhibit A at Def. Apps</u>. 14. Plaintiff made a demand on Defendant IMT and Enclave on May 12, 2010 addressing his "damages-to-date." <u>Exhibit A at Def. Apps. 25</u>.

> 21. The limitations period "commences either from the time of injury to the consumer or from the date of the consumer's discovery of the error, whichever is later." *Hyde v. Hibernia Nat['l] Bank in Jefferson Par.*, 861 F.2d 446, 449 (5th Cir. 1988). Plaintiff commenced this present action on February 6, 2015. <u>Doc. 2</u>. Plaintiff knew of the information reported on Plaintiff's credit report and was complaining of damages several years before he commenced this action.

> 22. Plaintiff's amended complaint alleges damages done to him more than two years before he commenced this action. *See generally* <u>Doc. 47</u>. Plaintiff disputed his credit report more than two years before commencing this action. <u>Doc. 47</u> at 13. Under the standard enumerated in *Hyde*, the limitations period for Plaintiff's FCRA action commenced more than two years before February 6, 2015, when he commenced this action. Plaintiff's action is barred by the statute of limitations, and summary judgment for the Defendants should be granted on all claims.

Defs.' Summ. J. Mot. 11 (footnote omitted). Defendants also note that February 6, 2015, was the

filing date of the first of three cases by Plaintiff against Defendants that were ultimately consolidated

into one action.

Plaintiff disagrees that his claims are barred by the FCRA's statute of limitations set forth

in § 1681p and contends as follows:

44. Plaintiff knew that his credit reports had contained inaccuracies, but did not make any reference to FCRA or that the Defendants had violated the FCRA. Similar to *Andrews v. Equifax Info. Servs. LLC*, 700 F. Supp. 2d 1276 (W.D. Wash. 2010), none of the events from early on clearly indicate that the Plaintiff knew of Defendants' violations of FCRA, nor that these issues were due to Defendants' failure to use reasonable procedures or to reinvestigate later on. Consequently, the only damages Plaintiff made a demand for had been the reimbursement of steep deposits in order to lease a new apartment, which in fact, did not relate to the FCRA. Defendants had reported various alleged debt amounts between 2010 to 2013, purposely re-aged the alleged debt account in 2013 to prolong the negative impact on Plaintiff's credit files, produced at least two (2) background screening reports on Plaintiff with credit assessment and recommendations as a credit reporting agency that prevented Plaintiff from leasing apartments, and more importantly, failed to provide documentation regarding any one of Plaintiff's disputes. The court has held that "FCRA provides damages when a bank or credit reporting agency fails to take certain steps once notice of a consumer dispute is received." *Broccuto v. Experian Information Solutions, Inc.*, 2008 WL 1969222 (E.D. Va., May 06, 2008) (NO. CIV.A. 3:07CV782HEH). "It is the failure to act . . . which creates the cause of action." A new limitations period started each time the Defendant failed to act; therefore, the Plaintiff's claims are valid. Furthermore, every time a potential credit grantor pulled Plaintiff's credit report and either declined credit or charged a higher rate of interest because of Defendants' alleged debt, the statute of limitations is renewed. Plaintiff had been declined credit, declined for leasing opportunities, declined for credit limit increases, denied or charged additional deposits to lease apartments, and charged higher rates of interest through 2014 because of Defendants' alleged debt. Each of these events had renewed the statue of limitations. Exhibit O. Finally, Plaintiff could not have known about the Defendants' violations of the FCRA as a credit reporting agency until after the President of both businesses and Director of Information Services proved the Defendants are a CRA via affidavit during case consolidation and with separate testimony. (DC-16-07746 at 43:50). This discovery tacks onto the limitations period.

Pl.'s Summ. J. Resp. 23-24.

Section 1681p of the FCRA provides:

An action to enforce any liability created under this subchapter may be brought . . . not later than the earlier of—

(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or

(2) 5 years after the date on which the violation that is the basis for such liability occurs.

15 U.S.C. § 1681p. When a republication of credit information results in a new denial of credit, it constitutes a distinct harm and gives rise to a cause of action that is separate from that which arose from the original publication of credit information. *Young v. Equifax Credit Info. Servs., Inc*., 294 F.3d 631, 635 (5th Cir. 2002) (citing *Hyde v. Hibernia Nat'l Bank*, 861 F.2d 446, 450 (5th Cir. 1988)).

Plaintiff's contention that he was not aware of the alleged FCRA violations that form the basis for his claims in this case is not supported by the summary judgment evidence. Plaintiff's summary judgment response and both parties' evidence indisputably show that Plaintiff knew or believed, as early as November 21, 2009, that the information regarding the Resident Collect, Inc. debt included in his credit report was incorrect; that Defendants were the source of the incorrect information; and that Defendants failed to correct the information, even though Plaintiff had contacted Defendants numerous times between 2009 and 2013 to dispute the debt. Thus, the court can reasonably infer that Plaintiff was aware of Defendants' alleged violations of the FCRA that occurred before February 6, 2013, despite his unsupported contentions to the contrary. Plaintiff's FCRA claims that pertain to the Resident Collect, Inc. debt that was reported, disputed, verified, or republished before February 6, 2013, two years before this action was filed, are, therefore, time-barred under § 1681p(1). *See Mack v. Equable Ascent Fin., L.L.C.*, 748 F.3d 663, 665-66 (5th Cir. 2014) (per curiam) (explaining that the limitations period for FCRA claims "begins to run when a claimant discovers the facts that give rise to a claim and not when a claimant discovers that those facts constitute a legal violation"). Further, Plaintiff's contention that he was not aware that Defendants were CRAs until they moved in May 2015 to consolidate the related actions filed by him is unavailing because, as the court herein explains, Plaintiff's evidence is insufficient to raise a

genuine dispute of material fact as to whether Defendants qualify as CRAs for purposes of the

FCRA.

As noted, Plaintiff also contends that the statute of limitations period was extended because

Defendants "re-aged the alleged debt account in 2013 to prolong the negative impact on [his] credit

files." Pl.'s Summ. J. Resp. 24. According to Plaintiff's summary judgment response, after he

disputed the alleged debt for a final time in February 2013, Defendants reported the debt again on

March 27, 2013, despite their agreement on March 25, 2013, to no longer report the debt:

> Plaintiff disputed the unjustifiable debt of $625.00 with the major credit
> bureaus a final time for February 2013. Exhibit G: 1-2. Plaintiff was met with the
> same verification by Defendants. *Id.* Plaintiff contacted RCI and Resident Check on
> or about March 25, 2013, and asked to speak to the legal department. Plaintiff was
> then transferred to an individual that throughout the entire conversation refused to
> give out her name. Plaintiff advised Defendants that a complaint would be filed with
> the Texas Attorney General Office the following day unless the unjustifiable debt of
> $625.00 be retracted from Plaintiff's credit files. It was during this discussion that
> Defendants agreed to no longer report the collection account, that a retraction letter
> be drafted and sent to Plaintiff as a safeguard to protect his credit files, and that a
> payment of $51.10 (less the $25.00 administrative fee) would be remitted once the
> obligations of the Defendants had been adhered to in regard to the former
> stipulations. Plaintiff was then directed to speak with an account manager to
> implement the agreed resolution. *Id.* Plaintiff had hoped for the best, but hopes faded
> almost immediately on the day of March 27, 2013 after a monitoring alert warned of
> activity by RCI. Instead of a retraction on the collection account, Defendants updated
> a balance of $76.10. Exhibit A: 8. . . . Plaintiff contacted the account manager the
> following afternoon only to be advised that the collection had been updated correctly,
> and that a payment of $76.10 must be made in order for the account to reflect a zero
> paid balance. This led Plaintiff and the account manager into a heated exchange. The
> account manager abruptly ended the call. Plaintiff called several more times
> throughout the course of 2013. Plaintiff's calls had been answered by a front desk
> operator that continued to inform him no one could discuss the account . . . that the
> matter had already reached the legal department, but ultimately communications had
> been halted for 2013. *Id.*

*Id.* at 9-10. Plaintiff submitted evidence that indicates he disputed the Resident Collect, Inc. debt

of $625 on, or just prior to, February 6, 2013, and the debt was verified without change to his report.

*See* Pl.'s Summ. J. Exs. G-1, G-2. He also submitted evidence, which shows that his credit report

was updated on March 27, 2013, with a new debt amount of $76. *See* Pl.'s Ex. A-8.[5] This evidence

is sufficient to raise a genuine dispute of material fact as to whether Plaintiff's FCRA claim with

respect to events that occurred on or after February 6, 2013, are time-barred. *See Young*, 294 F.3d

at 635. As herein explained, however, any claims Plaintiff has with respect to events that occurred

on or after February 6, 2013, fail for other reasons.

### 2.     Section 1681e(b) and 1681i(a)(1) of the FCRA

Defendants contend that Plaintiff's claims under sections 1681e(b) and 1681i(a)(1) of the

FCRA fail as a matter of law because they are not CRAs.

Plaintiff responds that Defendants qualify as CRAs because, as shown by their website, they

provide background screening reports with credit assessment and recommendations. Plaintiff further

asserts that "Defendants" or RCI and Resident Check[6] are CRAs because they share common

---

[5] Defendants do not dispute Plaintiff's account of events in February and March 2013. They instead contend that the evidence relied on by him is inadmissible and cannot be considered in ruling on their summary judgment motion. Alternatively, Defendants contend that Plaintiff's claims fail for other reasons. In particular, Defendants object to Plaintiff's Exhibits A-8, G-1, and G-2 on the grounds that they constitute inadmissible hearsay under Federal Rule of Evidence 802 and are not authenticated as required by Federal Rule of Evidence 901. The court **overrules** the hearsay objection to the extent the evidence is submitted to show that events occurred with respect to the reporting, dispute, and verification of the debt on or after February 6, 2013, rather than for the truth of the matters asserted in these documents. The court also **overrules** Defendants' authentication argument with respect to these documents, as Plaintiff repeatedly cites to and refers in his summary judgment response and supporting declaration to his various credit reports, Pl.'s Summ. J. Ex. O; and the court is able to determine based on its review of these documents, the distinctive characteristics of the documents, and "the appearance, contents, substance of the [documents], taken together with all the circumstances," that the documents are what Plaintiff claims them to be—copies of his credit report that were prepared and provided to him by CRA TransUnion. *See* Fed. R. Evid. 901(a)-(b)(1), (4). Moreover, Defendants rely on and submitted some of the same evidence in support of their summary judgment motion. *See* Defs.' Summ. J. Ex. C (Doc. 93-1).

[6] Plaintiff frequently uses the term "Defendants" interchangeably when talking about all four Defendants and individual Defendants such as RCI and Resident Check; thus, it is difficult to determine whether Plaintiff's references to "Defendants" are intended to mean all Defendants as opposed to a specific Defendant.

owners, officers, directors, and employees; operate out of the same address; and act as a single entity in performing business dealings.

Defendants reply that Plaintiff's evidence of what appears to be a screen shot of Resident Check's website is not competent summary judgment evidence and in no way establishes that Defendants are CRAs. Defendants further assert that common ownership or management is insufficient to disregard Defendants' separate legal identities.

The FCRA's obligations under sections 1681e(b) and 1681i(a)(1) apply only to a CRA's actions in connection with a consumer report. Section 1681a(f) of the FCRA defines "consumer reporting agency" as

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

The website page relied on by Childs merely describes Resident Check or "ResidentCheck" as "a national provider of resident screening, pre-employment screening and multifamily collections." Pl.'s Summ. J. Ex. J. This evidence would not permit a reasonable trier of fact to find that Resident Check or any other Defendant "assemble[s] or evaluate[s] consumer credit information *for the purpose of furnishing consumer reports* to third parties," as required by section 1681a(f). 15 U.S.C. § 1681a(f) (emphasis added). Accordingly, Plaintiff has failed to raise a genuine dispute of material fact that Defendants qualify as CRAs. His claims under sections 1681e(b) and 1681i(a)(1)

of the FCRA, therefore, fail, and Defendants are entitled to judgment as a matter of law as to these claims.

### 3. Section 1681s-2(b)(1) of the FCRA

Defendants contend that Plaintiff's claim under section 1681s-2(b)(1) fails because: (1) Resident Check, Enclave, and IMT are not "furnishers" of consumer information under the FCRA, and Plaintiff has no evidence to show that these entities furnished any information to a CRA; (2) Plaintiff's account was assigned to RCI and Allied for collection by IMT; and (3) while RCI and Allied qualify as "furnishers," they fully performed all duties required of them under the FCRA in response to the disputes they received.

To establish a violation of section 1681s-2(b)(1), a consumer must show, among other things, that he notified the CRA of the dispute in accordance with the procedure set forth in § 1681i(a)(2), and "that [the] consumer reporting agency . . . notified [the furnisher] pursuant to § 1681i(a)(2)" of the consumer's dispute "within five business days from the time the consumer notifies the consumer reporting agency of the dispute." *Young*, 294 F.3d at 639. "Such notice [by a consumer reporting agency] is necessary to trigger the furnisher's duties under Section 1681s-2(b)." *Id.* Under section 1681s-2(b)(1), if a CRA notifies a furnisher of credit information that a consumer disputes the reported information, the furnisher must "'review all relevant information provided by the [consumer reporting agency],' 'conduct an investigation,' 'report the results of the investigation,' and modify . . . delete . . . or . . . permanently block the reporting of [inaccurate or incomplete] information.'" *Jett v. American. Home Mortg. Servicing., Inc.*, 614 F. App'x 711, 713 (5th Cir. 2015) (per curiam) (quoting 15 U.S.C. § 1681s-2(b)(1)(A)-(E)). Section 1681s-2(b)(1), therefore, applies to furnishers

of information. *See id.* "The FCRA does not define 'furnisher of information,'" but district courts in this Circuit "have defined the term broadly to mean 'an entity [that] transmits information concerning a particular debt owed by a consumer to a consumer reporting agency.'" *Shaunfield v. Experian Info. Sols., Inc.*, 991 F. Supp. 2d 786, 794 n.7 (N.D. Tex. 2014) (citing and quoting *Alam v. Sky Recovery Servs., Ltd.*, No. H-08-2377, 2009 WL 693170 at *4 (S.D. Tex. Mar. 13, 2009), and *Thomasson v. Bank One*, 137 F. Supp. 2d 721, 722 (E.D. La. 2001)).

Furnishers of credit are required to conduct a reasonable investigation to determine whether disputed information in a consumer credit report can be verified. *Robertson v. J.C. Penney Co., Inc.*, No. 2:06-CV-3KS-MTP, 2008 WL 623397, at *8 (S.D. Miss. Mar. 4, 2008) (citing cases). The requirement that furnishers conduct a reasonable investigation is analogous to the requirement imposed on CRAs under section 1681i(a). *Id.* The reasonableness of an investigation and adequacy of procedures used are "judged according to what a reasonably prudent person would do under the circumstances" and is generally a fact issue for the jury. *See Cousin v. Trans Union Corp.*, 246 F.3d 359, 368 (5th Cir. 2001). "A credit entry may be 'inaccurate' within the meaning of [section 1681e(b) of] the statute either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998). "Mere imprecision does not render information inaccurate." *Shaunfield*, 991 F. Supp. 2d at 798 (quoting *Toliver v. Experian Info. Solutions, Inc.*, 973 F. Supp. 2d 707, 714 (S.D. Tex. Sept. 19, 2013).

## a. Resident Check, Enclave, and IMT's Liability as Furnishers of Information

Childs contends that "Defendants" qualify as furnishers of information because he sent three notices of disputes to RCI and Resident Check "that included documents with a revised balance of $51.10 in addition to disputing the unjustifiable debt of $625 via the phone." Pl.'s Summ. J. Resp. 20. Childs asserts that Enclave and IMT are furnishers of information because:

> First, Plaintiff provides documents that show se[]veral disputes and credit reports listed with Apartment Enclave. Secondly, Plaintiff provides documents that he disputed on several occas[]ions the reports with Enclave and IMT, and that an active dispute status had not been reported to RCI or the CRAs. Lastly, Enclave and IMT provided consumer information on Plaintiff to RCI. RCI itself is a consumer reporting agency. Thus, Enclave and IMT furnished Plaintiff's consumer information directly to a CRA.[] Plaintiff overcomes the Defendants' claims.

*Id.* at 13.

Evidence that Childs notified Defendants or a CRA of disputes regarding the debts assessed against him by Enclave is insufficient to raise a genuine dispute of material fact as to whether Resident Check, Enclave, or IMT qualify as furnishers of information for purposes of section 1681s-2(b)(1) because the evidence does not demonstrate that any of these Defendants furnished information concerning a debt owed by Childs to a CRA. Likewise, that Childs's credit report contained information regarding the debt assessed by Enclave is insufficient to raise a genuine dispute as to whether any Defendant other than RCI and Allied provided information regarding his debt to a CRA. Moreover, the court has already determined that Defendants do not qualify as CRAs. Thus, Plaintiff's argument that Enclave and IMT are furnishers of information because they provided information regarding his debt to RCI is unavailing. Plaintiff has, therefore, failed to raise a genuine dispute of material fact as to whether Resident Check, Enclave, or IMT qualify as furnishers of

information for purposes of section 1681s-2(b)(1) of the FCRA, and Defendants are entitled to judgment as a matter of law on Plaintiff's section 1681s-2(b)(1) claim against Resident Check, Enclave, or IMT.

### b.       RCI and Allied's Liability as Furnishers of Information

Defendants contend that Plaintiff's remaining claim against RCI and Allied under section 1681s-2(b)(1) fails because the charges assessed were valid or accurate, and RCI and Allied otherwise satisfied their duties as furnishers of information under the FCRA in investigating Plaintiff's disputes and verifying that the information furnished by them to CRAs regarding Plaintiff's account with Enclave and debt were accurate.  Because the court has already determined that only Plaintiff's FCRA claims that arose on or after February 6, 2013, survive Defendants' statute of limitations defense, the court limits its discussion to this time period in addressing Plaintiff's remaining claim against RCI and Allied under section 1681s-2(b)(1).  From what the court can ascertain from Plaintiff's summary judgment response, the disputes reported by him after this date were made to one or more Defendants, rather than a CRA, and there is no indication or evidence that a CRA ever reported a dispute by Plaintiff necessary to trigger RCI's and Allied's duties as furnishers under section 1681s-2(b).  Defendants, however, do not raise this as a ground  in their summary judgment motion.  Accordingly, the court does not address it and assumes for purposes of its analysis that the requirements necessary to trigger RCI's and Allied's duties as furnishers under section 1681s-2(b) with respect to Plaintiff's dispute(s) on or after February 6, 2013, were satisfied.

As previously noted, Plaintiff contends that, after he disputed the debt of $625 a final time in February 2013, the parties agreed that Defendants would remove the debt from his credit report,

and Plaintiff would make a payment of 51.10 ($76.10 for a water bill, wall stains, and light bulbs minus the $25 administrative fee) once the debt was discharged and removed from his credit report. The summary judgment record does not contain any evidence of this alleged agreement; however, Defendants' record of Plaintiff's account with Resident Collect, Inc. includes a notation that Plaintiff's account was reported to the credit bureaus on March 27, 2013, the same date that a TransUnion credit report requested by Plaintiff shows a reduced debt amount of $76 for Plaintiff's account with Enclave. This evidence may be sufficient to support the inference that the parties agreed to reduce the debt to $76.10, but it does not support Plaintiff's contention that Defendants also agreed to discharge the administrative fee or remove from Plaintiff's credit report the remaining balance of $76.10 *before* it was paid by him.

Moreover, while Plaintiff contends that all of the charges assessed and outstanding balances reported by Defendants were false, inaccurate, or invalid, Plaintiff's evidence is insufficient to rebut Defendants' evidence or raise a genuine dispute of material fact regarding the validity of the remaining $76.10 charge or any other charges assessed by Defendants. Defendants submitted a copy of the renewed lease dated January 26, 2009, that was signed and initialed by Plaintiff on January 29, 2009. Under the renewed lease, Childs paid nothing for the month of February, except utilities not paid for by Enclave, as long as he complied with the terms of the renewed lease.

Among other things, the renewed lease extended the lease term from February 5, 2009, to August 31, 2009, and required Plaintiff to provide at least sixty days' written notice of his intent to terminate the lease or move out of the leased apartment, even if the lease became a month-to-month lease. Defs.' Summ. J. App. 1-6. The renewed lease also made Plaintiff responsible for all utilities,

except cable television, and allowed Enclave to assess the following charges: a reletting charge of $551.65 for failure to give the required written move-out notice; concession charges of $19 per month and a $50 fee if Plaintiff failed to fulfill the terms of the lease; and reasonable cleaning charges as determined by Enclave.

In support of their summary judgment motion, Defendants submitted the January 2009 communications between Plaintiff and Misty May concerning the renewed lease that took place shortly before it was executed by Plaintiff on January 29, 2009. Defendants also submitted a copy of Plaintiff's July 28, 2009 written notice, which states: "To Management: This notice serves as my intent to vacate unit #1002 at the end of my lease term," *id.* at 9, as well as an e-mail from Toone to Childs on August 17, 2009, in which Toone states:

> I want to let you know that your lease expires on 08/31/2009 per the lease agreement changes that you made. I want to make you aware that you are short in your 60 day Notice to Vacate by 25 days. If you choose not to fulfill these days the penalty for that will be $533.87.

*Id.* at 10. The Statement of Deposit Account relied on by Defendants indicates that it was prepared by Toone on September 9, 2009. The Statement of Deposit Account sets forth Childs's move-in date of August 5, 2008; the date he provided notice to vacate the apartment (July 28, 2009); Childs's move-out date of August 31, 2009; and a summary of charges totaling $1914.62 owed by Childs as of September 9, 2009, for insufficient notice ($533.87); the cost of reletting Childs's apartment ($551.65); a concession charge back ($763); water utility charges ($38.10); the fee assessed for cleaning the bathtub ($15); the fee assessed for a primer oil stain on the apartment bedroom wall ($5); and the cost of replacing four light bulbs in Childs's apartment ($8). The record maintained by

Defendants for Plaintiff's account indicates that a $50 administrative fee was added on November 4, 2009.

The foregoing evidence relied on by Defendants shows that the fees assessed were consistent with the terms of Childs's renewed lease in light of his failure to provide adequate notice of his intent to vacate his apartment, and the court determines that this evidence is sufficient to satisfy Defendants' burden as the summary judgment movant, with respect to this claim and the accuracy of the information furnished by RCI and Allied regarding Childs's account and outstanding debt. Although Defendants rely on this and other evidence for the truth of the matter asserted in the documents it submitted, the evidence is admissible under the business records exception to the hearsay rule because Defendants provided the affidavit for RCI and Resident Check accountant Michael Vandiford, who states that he is the custodian of records for these entities, the records attached to his affidavit were made and kept in these entities' regular course of business, and the records consist of original documents maintained as business records or exact duplicates of original documents. The documents attached to Vandiford's affidavit, therefore, fall under the business records exception to the hearsay rule. *See* Fed. R. Evid. 803(6).

In response to Defendants' summary judgment motion, Plaintiff contends that the charges assessed in the billing statement provided by Enclave were "patently false" because the copy of the lease provided to him together with the collection statement had "handwriting [that] mask[ed] the original typed contract, a set of mismatched initials, and added damages/cleaning fees with absolutely no evidence to support the charges." Pl.'s Summ. J. Resp. ¶ 4 (citing Pl.'s Ex. B.1). Plaintiff asserts that he "maintained the actual typed contract that had been signed and dated, a

written statement confirming June 30, 2009 as the Lease-end date from Enclave's manager, and photos of the unit the day keys had been turned in." *Id.* (citing Pl.'s Ex. L). According to Plaintiff, this evidence demonstrates that the lease ended on June 30, 2009, not August 31, 2009; he provided adequate notice of his intent to vacate the apartment; and he left the apartment in good order.

Plaintiff's contentions regarding the validity of the charges, however, are conclusory and not supported by competent summary judgment evidence. Plaintiff's assertion that the copy of the lease provided to him by Enclave, together with the collection statement, is not the actual lease is not supported by the evidence relied on by him in Exhibit B.1 to his summary judgment response, which is illegible and consists of what appears to be a copy of the first page of the lease relied on by Defendants. Plaintiff also relies on another incomplete version of the lease that differs from the lease submitted by Defendants to support his contention that the lease expired on June 30, 2009, rather than August 31, 2009. *See* Pl.'s Summ. J. Ex. L. He relies on the same evidence to establish that the lease only required him to give thirty days' notice of his intent to vacate the leased apartment, not sixty days' notice, such that his notice on July 28, 2009, was timely. *See* Pl.'s Summ. J. Resp. ¶ 4 ("Plaintiff submitted an intent to vacate to the Enclave on July 28, 2009 per the thirty (30) day notice requirement."). Because Plaintiff relies on his version of the lease to prove the truth of the matter asserted therein, that is, to show that the lease only required sixty days' notice and expired on June 30, 2009, according to its own terms, it is it is hearsay for which no exception applies. *See* Fed. R. Evid. 801(c).

Moreover, Plaintiff's contention that the term of his lease expired on June 30, 2009, is inconsistent with his written notice to Enclave in which he stated: "To Management: This notice

serves as *my intent to vacate unit #1002 at the end of my lease term*." Defs.' Summ. J. App. 9 (emphasis added). It is undisputed that Plaintiff's written notice was provided on July 28, 2009, twenty-eight days *after* the date Plaintiff contends that his lease term ended on June 30, 2009. Thus, it would have been impossible for Plaintiff, after giving written notice on July 28, 2009, to vacate the apartment "at the end of [his] lease term" on June 30, 2009. Similarly, if the lease only required thirty days' notice to vacate the apartment and the lease term ended on June 30, 2009, as Plaintiff argues, he would have had to give thirty days' notice of his intent to vacate the apartment before June 30, 2009, not thirty days' after this date. Plaintiff's unsupported contentions regarding the lease terms, therefore, defy logic.

Additionally, the photographs labeled "LIVING ROOM," "SINK," "BATHROOM," REFRIGERATOR," "KITCHEN," AND "BEDROOM" that Plaintiff relies on as evidence to dispute the validity of the move-out charges assessed for the condition of his apartment are not authenticated or self-authenticating, and the court has no way of determining whether these photographs represent what is purported by Plaintiff, that is, photographs of the apartment in question taken on the date he vacated the apartment. This evidence is, therefore, inadmissible and cannot be considered by the court in ruling on Defendants' summary judgment motion. Even if the photographs were admissible, they would be insufficient to raise a genuine dispute of material fact regarding the validity of the fees assessed for cleaning the bathtub ($15), the primer oil stain on the apartment bedroom wall ($5), and the cost of replacing four light bulbs in Childs's apartment ($8) because the court cannot determine from the dark or unclear resolution and limited angles of these photographs whether assessment of these fees was appropriate. Additionally, except for his contention that no fees should have been

assessed because he not violate the terms of his lease, and his contention that Defendants agreed to

discharge any debt remaining in February 2013, Childs does not specifically dispute the validity of

the water utility charge or the administrative fee included in the $76.10 that was outstanding on or

after February 2013.  Consequently, Plaintiff has failed to raise a genuine dispute of material fact as

to whether RCI and Allied violated section 1681s-2(b)(1) by providing inaccurate information or

failing to accurately update the information provided to TransUnion or other CRAs regarding the

outstanding debt on or after February 6, 2013, and remove the $76.10 that remained on his credit

report as of this date. Defendants are, therefore, entitled to judgment as a matter of law on this claim.

## III.    Defendants' Motions for Sanctions (Docs. 94 and 109)

In their motions for sanctions, Defendants seek to recover attorney's fees and costs and

dismissal with prejudice of this action under Federal Rule of Civil Procedure 37 for Plaintiff's: (1)

failure to appear for his deposition; (2) failure to comply with the magistrate judge's October 24,

2016 order requiring him to provide amended responses to Defendants' discovery requests by

November 11, 2016; (3) failure to comply with this court's November 3, 2016 order denying

Plaintiff's request for an extension of time to conduct depositions; and (4) refusal to cooperate with

defense counsel in scheduling depositions and failure to engage in the discovery process in good

faith.

Rule 37 provides that, when a party fails to comply with a discovery order, the court may

enter an order:

> (i) directing that the matters embraced in the order or other designated facts be taken
> as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii).  Similarly, when a party fails to attend his own deposition after being served with proper notice or fails to serve answers, objections, or a written response to properly served interrogatories or requests for inspection under Rules 33 and 34, the court may impose sanctions against the party that may include entry of an order under Rule 37(b)(2)(A)(i)-(iv). Fed. R. Civ. P. 37(d)(1)(A)(i) and 37(d)(3).  Alternatively, or in addition to the sanctions listed in Rule 37(b)(2)(A), "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(d)(3).  The failure of a party to appear for his deposition "as described in Rule 37(d)(1)(A) is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)."  Fed. R. Civ. P. 37(d)(2).

### A.  Plaintiff's Failure to Appear for His Deposition and Engage in Discovery in Good Faith

Defendants contend that dismissal with prejudice of this action and the imposition of attorney's fees is warranted for Plaintiff's failure to attend his own deposition, refusal to cooperate in scheduling depositions, and his overall failure to engage in discovery in good faith. In support of their motion (Doc. 94), Defendants submitted evidence, which shows that Childs failed to appear for his deposition on September 26, 2016, at 9 a.m., despite being served with proper notice. Defendants contend that Plaintiff's failure to attend his deposition and participate in discovery has substantially prejudiced them by impairing their ability to prepare a defense against Plaintiff's claims and causing them to incur a "considerable sum" or "thousands of dollars" in dealing with his "bad faith behavior" in "refusing to attend depositions or communicate with counsel for Defendants." Defs.' Summ. J. Mot. 5-6.  Defendants contend that dismissal with prejudice of this action is appropriate since a lesser monetary sanction will not likely have any effect on Plaintiff's conduct given his *in forma pauperis* status, and he will simply file another action against Defendants if the case is dismissed without prejudice.

Plaintiff does not deny that he failed to attend his deposition on September 26, 2016, and provides no explanation for his failure to attend the scheduled deposition.  He instead asserts that defense counsel refused to produce witnesses for depositions noticed by him on August 22, 2016, and purposely created a conflict by "scheduling over" his deposition notice and filing a motion for protective order pertaining to the witness depositions he scheduled for September 26, 2016.  As a result, Plaintiff contends that Defendants' request for sanctions is premature because "depositions will need to be rescheduled moving forward." Pl.'s Summ. J. Resp. 2.  For the same reason, Plaintiff

denies that he engaged in any conduct that would justify sanctions and contends that it was Defendants that created the scheduling conflict on September 26, 2016.

The court determines, for the reasons that follow, that Defendants' contentions regarding Plaintiff's refusal to cooperate or communicate with defense counsel are too general in nature and not sufficiently developed or supported by evidence to warrant sanctions of any kind. On the other hand, Defendants have shown that Plaintiff failed to attend his deposition scheduled for September 16, 2016, and the court determines that Plaintiff's failure to do so was not excused. According to the record in this case, Plaintiff noticed ten depositions on August 22, 2016, to take place at 10:30 a.m. on September 26, 27, 28, 29, and 30, 2016, and October 3, 2016. *See* Pl.'s Notice of Depositions (Doc. 78). Plaintiff's notice included September 26, 2016, as the deposition date for Peter Omholt ("Omholt") and Scott Burns ("Burns"). The following day, Defendants noticed Plaintiff's deposition for September 26, 2016.

Contrary to Plaintiff's contention, the issue regarding overlapping deposition dates was not one of the bases for which Defendants sought protection. With respect to Omholt and Burns, Defendants merely contended that Plaintiff should be required to take the depositions of these persons in California, the place of their residence, and Plaintiff should not be allowed to take the depositions by video conference. Thus, Defendants' decision to move for a protective order, and the magistrate judge's order granting in part and denying in part Defendants' motion, is quite beside the point and does not justify or excuse Plaintiff's failure to attend his own deposition. Plaintiff also acknowledged in response to the Motion for Protective Order that Defendants notified him on August 17, 2016, before Plaintiff served his Notice of Depositions, that, defense counsel was available to take his deposition on September 26, 2016, but none of the defense witnesses noticed

by him were available before September 27, 2016. Moreover, although Plaintiff contends that Defendants purposely created a conflict by scheduling his deposition for September 26, 2016, the same date he noticed Omholt's and Burns's depositions, and filing a motion for protective order, he never sought protection under Rule 26(c) or moved to quash Defendants' notice to take his deposition on September 26, 2016. Accordingly, Plaintiff's failure to attend his deposition on September 26, 2016, was not excused. *See* Fed. R. Civ. P. 37(d)(2).

As the court has already determined that Defendants are entitled to judgment as a matter of law on Plaintiff's FCRA claims, their request for dismissal with prejudice of this action is moot. The court, nevertheless, determines that Defendants are entitled to recover from Plaintiff their reasonable expenses, including attorney's fees, caused by Plaintiff's failure to attend his deposition on September 26, 2016; that such failure was not substantially justified; and there are no circumstances that would make such an award unjust. *See* Fed. R. Civ. P. 37(d)(3). Accordingly, Defendants' Motion for Rule 37 Sanctions (Doc. 94) will be granted to this extent and denied in all other respects.

### B.      Plaintiff's Failure to Comply with Discovery Orders

Defendants contend, based on Plaintiff's discovery responses and various e-mail communications between defense counsel and Plaintiff, that Plaintiff failed to comply with the magistrate judge's October 24, 2016 discovery order (Doc. 101) that required him to provide amended responses by November 11, 2016, to all of Defendants' discovery requests and interrogatories at issue in Defendants' motion to compel. In their sanctions motion (Doc. 109), Defendants contend that Plaintiff's discovery responses that were provided on December 2, 2016, were untimely, as they were provided twenty-one days after the deadline set by the magistrate judge. In addition, Defendants contend that Plaintiff's response failed to comply with the magistrate judge's

order requiring him to provide amended responses that: (1) omit all boilerplate language; (2) respond specifically to each interrogatory; and (3) cease referring to unidentified documents. Defendants further assert that, instead of complying with the magistrate judge's order to provide amended responses, Plaintiff simply changed his objections and provided responses that include the same objections overruled by the magistrate judge. In addition, Defendants contend that, as of the date of their motion, Plaintiff has yet to produce any documents.

Defendants also contend that Plaintiff failed to comply with this court's November 3, 2016 order by: (1) noticing depositions for December 12 through 14, 2016, although the court denied his request for an extension to conduct depositions and the October 3, 2016 discovery deadline had expired; and (2) refusing to withdraw the improper deposition notices. Defendants contend that they are entitled to an unspecified amount of attorney's fees, in an amount deemed appropriate by the court, as a result of Plaintiff's failure to comply with the two court orders.

Plaintiff contends that sanctions are not warranted. He maintains that he mailed "copies of the request for discovery to Defendants prior to Veterans' Day on November 10, 2016," and forwarded documents to Defendants electronically on an unspecified date after learning that what he put in the mail was not delivered to Defendants. Pl.'s Summ. J. Resp. 1. In addition, Plaintiff attempts to shift the blame to Defendants and argues that Defendants' refusal to receive documents or responses to their requests for discovery was unreasonable because Plaintiff advised Defendants that his "mail is repeatedly stolen from his community which has been reported to the police four times since August, and yet, the Defendants refuse more secure measures" for exchanging discovery. *Id.* at 2. Plaintiff asserts that his deposition notices were timely in light of the amended scheduling

order entered by the court, which according to Plaintiff, extended all discovery to January 3, 2017, and was necessitated by "the continued motion practice by Defendants." *Id.* at 1.

It is clear from Plaintiff's response and the parties' correspondence that the depositions noticed by Plaintiff in December 2016 were the result of Plaintiff's misunderstanding and misinterpretation of the court's November 3, 2016 order (Doc. 105) and the court's Amended Scheduling Order (Doc. 107). Given Plaintiff's *pro se* status, the court determines that the imposition of sanctions is not justified. Moreover, there is no indication that Defendants suffered any legal prejudice or undue delay as a result of Plaintiff's conduct, and Plaintiff's conduct in noticing and attempting to schedule additional depositions after the discovery deadline did not technically violate the court's November 3, 2016 order, as this order did not require Plaintiff to take any action that he is alleged to have not taken.

On the other hand, the magistrate judge's October 24, 2016 discovery order is unequivocally clear, and Plaintiff has failed to provide any legitimate explanation or evidence to support his contention that he put his discovery responses in the mail "before Veterans[] Day on November 10, 2016," and his contention in this regard is undermined by his statement in an e-mail dated November 17, 2016, that the "[m]ail more than likely went out after Saturday after [V]eteran[]s day." Defs.' Summ. J. Ex. B. Even assuming as Plaintiff contends that there may have been a problem with mail being stolen at his current apartment complex, he fails to explain why he could not have mailed his discovery responses from a post office, and he points to no rule of procedure or other authority to support his contention that Defendants were required to agree to his request to exchange discovery or accept discovery responses served by him via e-mail or other electronic means. There is also no evidence that the discovery in this case was so voluminous to make the exchange of discovery and

production of documents in hard copy format unduly burdensome or unreasonable, and Plaintiff never sought protection under Rule 26 from the discovery at issue on this or any other ground. In addition, Plaintiff has presented no evidence that he ever produced the documents responsive to Defendants' discovery requests and does not address Defendants' contentions regarding his failure to amend his discovery responses in accordance with the magistrate judge's order.

For these reasons and after comparing Plaintiff's discovery responses attached to Defendants' motion for sanctions (Doc. 109) with the discovery responses included in Defendants' prior motion to compel which was granted by the magistrate judge, the court determines that Plaintiff failed to comply with the magistrate judge's October 24, 2016 discovery order requiring him to provide amended discovery responses to Defendants' discovery requests by November 11, 2016.[7] The court further determines that Plaintiff's failure to comply with the magistrate judge's discovery order was not excused or substantially justified, and imposition of sanctions against Plaintiff is, therefore, justified under the circumstances. Accordingly, the court will grant Defendants' motion for sanctions (Doc. 109) and allow Defendants to recover from Plaintiff their reasonable attorney's fees and expenses incurred with respect to Plaintiff's failure to comply with the magistrate judge's October 24, 2016 discovery order and in preparing and filing their motion for sanctions.

---

[7] Although Defendants included excerpts from Plaintiff's discovery responses in their motion to compel without submitting copies of Plaintiff's actual discovery responses, and it is unclear on which date Plaintiff served the discovery responses attached to Defendants' motion for sanctions, Plaintiff never contended that the excerpts did not accurately reflect his actual discovery responses. Likewise, he does not contend that the discovery responses attached to Defendants' motion for sanctions are not the amended discovery responses he served after the magistrate judge entered his order granting Defendants' motion to compel on October 24, 2016.

## IV.    Conclusion

For the reasons stated, the court **concludes** that no genuine dispute of material fact exists regarding the elements of Plaintiff's FCRA claims against Defendants.  The court, therefore, **grants** Defendants' Motion for Summary Judgment (Doc. 92) and **dismisses with prejudice** Plaintiff's FCRA claims against Defendants.  Defendants' Motion for Rule 37 Sanctions (Doc. 94) is **granted** to the extent set forth in this opinion, and Defendants are entitled to recover from Plaintiff their reasonable attorney's fees and expenses caused by Plaintiff's failure to attend his deposition on September 26, 2016.  Defendants' Motion for Sanctions for Failure to Comply with Court Order (Doc. 109) is **granted** to the extent set forth in this opinion, and Defendants are entitled to recover from Plaintiff their reasonable attorney's fees and expenses incurred with respect to Plaintiff's failure to comply with the magistrate judge's October 24, 2016 discovery order and in preparing and filing this motion for sanctions.  The court will enter a judgment in favor of Defendants by separate document pursuant to Rule 58 of the Federal Rules of Civil Procedure. Defendants' request for attorney's fees and expenses incurred for Childs's failure to attend his deposition and comply with the magistrate judge's October 24, 2016 discovery order must be filed by **September 25, 2016**, and must be supported by appropriate documentation and billing records and will be considered postjudgment.

The court **retains** jurisdiction over this action for the limited purpose of deciding the amount of attorney's fees and costs to be awarded to Defendants for Childs's failure to attend his deposition and comply with the magistrate judge's October 24, 2016 discovery order.

**It is so ordered** this 11th day of September, 2017.

Sam A. Lindsay
United States District Judge